Good morning. If it pleases the court, my name is Kenneth P. Tableman. I'm appearing here on behalf of the appellant, Mr. Eric Gooch. I'd like to reserve four minutes for rebuttal, please. Very well. There are a lot of parts to this case. I thought I would start off with a discussion of the failure to present sufficient evidence to prove that Mr. Gooch knew ahead of time that there was a gun involved in the third robbery charge, the PNC robbery of March 13, 2013. The proofs in this case were that this was the third in a series of three robberies, and the government's theory was that Mr. Gooch had to know that a firearm was employed in this robbery because firearms had been used in the previous robberies. But there was no evidence of actual knowledge, and factually, the robber of the bank, Mr. Williams, went into the bank and robbed the bank. Mr. Gooch was outside on the sidewalk. There was no evidence that he saw Mr. Williams with a gun. And unlike the other two previous robberies, Mr. Gooch gave a statement or a confession. As to the third robbery, there was no discussion about his knowledge of the use of a firearm in the robbery. Was there evidence that he participated in the planning of the third robbery as he did with the first and second? The only evidence that I can recall would be some testimony from a girlfriend that he and her were trying to rob another bank, but it wasn't specific discussion or proof as to how that was going to happen. Okay, but I thought it was established that he helped plan all three of them. Well, I think that's a little overbroad, Your Honor. The first robbery is the Rose's... Did they use the same gun in all three? No. Well, one gun was used, admittedly, in the first two, and that was the gun that Mr. Gooch actually had in his possession when he was arrested on April 8th. We don't know... You don't know the gun? We don't know the gun. All right. The M.O. of the robberies were all pretty much the same, although the last two were the banks and the first one was the discount store, but the method of the robbery was pretty much the same, wasn't it? Well, I don't know. I guess I would respectfully disagree with that. The first robbery is a robbery of a department store... Discount store. ...with an insider saying, I have a key to the... I know where the money is. That was Mr. Gooch's cousin who worked there, and she says, gee, I know where all this money is. I need money to pay my rent. And she talks to Mr. Gooch, and then she decides sort of at the last minute that she's going to have her boyfriend, Mr. Tripp, I think it is, and he... Mr. Caldwell is really the mastermind of all this, and he's the one that drives him over to the department store. Mr. Gooch is in the car, but Mr. Tripp goes in and does whatever he does inside, and I don't think there's any particular signature method that he used in terms of robbing the department store. All right. How about the two bank robberies? So then we go to the first bank robbery. I would say that that's a little different scenario altogether. The two men, my client and Mr. Williams, go into the bank ahead of time to get the lay of the land, see what's going on there, notice that there's a security guard there who tells them, you've got to take your hoods off. They were wearing, I guess, hooded articles of clothing. They... Mr. Gooch gets some change from a teller. They go outside of the bank, and then Mr. Williams goes in, and then later, shortly thereafter, Mr. Gooch goes in, and Mr. Williams puts a gun to the head of the manager, I think, and has her go back in the vault and get money. That's different than the second bank robbery, which... All three of them involved a firearm. All? Well, yes, all three involved a firearm. So, but we can argue about how similar... I mean, even though you say there's no evidence of actual knowledge, I mean, circumstantial evidence is sufficient to convict, right? Well... The answer is yes. Again, I'm going to say that that's true as a general statement. I still think you have to look at the specific facts of each case and decide whether a reasonable... See if the circumstantial evidence is enough that a reasonable juror could so convict beyond a reasonable doubt. Right. That's the standard we follow. I mean, I have suggested in my brief that really to protect the presumption of innocence and the government's burden of proof that when you're in a situation where you say, well, one, there's two choices, then that should not be enough, but that's not the rule that we follow in the Sixth Circuit. So I think if you... And I think it's telling that when the motion for judgment of acquittal is made to close the proofs, the trial court doesn't talk about advanced knowledge on the third bank robbery. I mean, I really do think you have to show something that would tell you that the person knows, under the Rosemont case, knows ahead of time. It's problematic just because you robbed a bank in one way with somebody when you were carrying the gun beforehand, and there's no showing that he had the gun the second time. Even though he was a planner of the robberies? Well, I mean, planner to me implies I'm the one that's pulling the strings and deciding what we're going to do and what we're not going to do. This means you're conspiring with your fellow defendants on what you're going to do. Well, I think, yes, in that sense, they didn't just wake up and go rob a bank without having a discussion. There's some discussion ahead of time. But as far as the actual mechanics of the robbery itself, all three episodes really are distinct, and I don't think it's fair to say, well, just because in general you do a robbery, that means automatically you're going to do it the same way the third time. So I guess turning to the issue of the first robbery at the department store and whether a Hobbs Act conviction can say that the court may find it very counterintuitive to examine an admitted armed robbery and say how can this not actually qualify as a crime of violence for purposes of 924C. But if you look at the language of the Hobbs Act and the court has to look at the elements of the charge, I would respectfully suggest that it's a little bit broader and there's conduct that could violate the Hobbs Act. How is that possible under sub B, sub 1, the term robbery means the unlawful taking or obtaining of personal property against his will by means of actual or threatened force or violence or fear of injury. What's uncertain about B1? Well, I don't think it's all that uncertain, but I think you can look at that and say that, is B1 separate from the extortion part? Well, extortion is B2. It is separate, yes. Is it not? Well, I think there's an argument. The statute separates them, right? It does, but post mathis, I mean, are there different penalties? It's the same crime, same penalty. Same penalties, but you can... property that could be done in the future under the Hobbs Act. So there's not a lot there, but that's the argument that I've made in my brief. And then finally, I would ask the court to carefully view the record as far as the finding of Mr. Boucher's competence to represent himself. This is a very tortured case. He was initially found to be incompetent. He was filing a lot of sort of incoherent pro se pleadings, and I don't really say that Judge Oliver was impatient or anything, but I do think it's hard to imagine that the person presenting himself as Mr. Boucher and what he did throughout this proceeding was actually competent to represent himself. Well, he had several competency hearings, and the final determination or final ruling that he was competent, you have not appealed, I don't think. Instead, you're arguing that the district judge did not properly, I guess, question him and determine his voluntariness, his knowledge of waiving his right to counsel. Right. Which is a little different than the competency finding. Sure. I know you're trying to put one into the other, but if your main argument that the ruling of competency was clear error, I think you probably should have appealed that ruling. Well, I guess, may I complete my? Oh, sure. I have perhaps been a little bit inartful in my presentation. A person has to knowingly waive their right to counsel, and I'm just suggesting that on this record, with all that went on, the multiple examinations, the multiple hearings. The only reason you say he didn't knowingly waive it is because you claim he's incompetent, but that finding of fact, that ruling, hasn't been appealed, that he is competent. Right. So, aren't you stuck with it? Well, I'm asking the court to review the record carefully and do what it can. Thank you. Thank you. May it please the court, my name is Dean Ranky. I represent the government in this appeal. There are really three separate issues here. There's a sufficiency claim, there's the self-representation claim after a finding of competence, and there's whether Hobbs Act robbery is a crime of violence under 924C. I'd like to start with the crime of violence argument. Hobbs Act robbery is a crime of violence under 924C, categorically, because it involves the unlawful taking of personal property from another by the use of actual or threatened use of force to person or property. We don't have a definitive case in our circuit saying that, talking about whether it's a crime of violence under the Hobbs Act, do we? In our circuit? Yeah. I think we do. Do you think we should publish this decision? Well, if we rule in favor of the government. Well, either way, it would provide, yeah, either way. Okay, either way, you think it's. Because it's a significant issue and other courts are ruling on it. The Second Circuit recently found in USV Hill, and I only have the West Law site for that, but it's 4120667, found that Hobbs Act robbery was a crime of violence both under the elements and also under the alternative argument, the residual clause of 924C, which this court has found to be valid in USV Taylor. There's other courts. Admittedly, courts are coming down on both sides of this issue, but there's a number of district court cases, three of which are cited in my brief, which I won't go into, but that also find that Hobbs Act robbery is a crime of violence because it has, as an element, the actual or threatened use of force. Mr. Gooch makes argument, too, that this could be committed against, or in a nonviolent way or in a future way, like poisoning. You could threaten to poison someone and that that somehow wouldn't be a threat of force. In Hill, the Second Circuit specifically rejected this argument and found that that would actually be a crime of violence because it's fear of injury which controls, and a fear of future injury is the same crime of violence as it's still the use of force, or it's a fear of injury, future injury, and they rejected that argument. Also, there's been a distinction, they tried to make a distinction between intangible property and tangible property, but neither 924C or the Hobbs Act makes that distinction. They just talk about property. Mathis really doesn't change this. Mathis really just, it's hard to say in some ways what Mathis did because it's kind of confused the issue. I think a lot of people have a problem trying to understand Mathis, but Mathis really just affirmed Duskamp's using the modified categorical approach but tried to narrow it to means, a means test as opposed to elements. Mathis defined elements as things that you need to prove to the jury, that a jury needed to find for a conviction. Means would be maybe alternative ways to commit the same crime. So Mathis doesn't really alter the landscape in this case. Moving on to the competency issue and the issue of self-representation. The district court had, I believe, approximately five competency hearings in this case, or ordered competency evaluations. Initially, Gooch was found incompetent and he was sent to the federal facility in North Carolina for further evaluation. After he was there for about eight months, North Carolina came back, a psychologist, and said that after further evaluation and review that he was competent. They found that he was malingering. They observed him interact on a daily basis with other inmates and people at the facility. They came to the conclusion that the first finding of incompetence was based on incomplete information and that he was actually competent to stand trial. The issue of self-representation came up, I think, in the third or fourth competency hearing. Gooch wanted to make the argument that the district court didn't have jurisdiction over his case. He consistently stuck with this argument. He kept saying to the court that he wouldn't serve any time in prison because the court didn't have jurisdiction. His counsel at the time tried to explain to him that that's not a good argument and didn't want to make the argument. Gooch still wanted to make the argument. At that point, Judge Oliver, after two competency hearings and a hearing on a motion, a notice of not guilty by reason of insanity, where Gooch was found to be sane at the time of the offense. The court then asked if he wanted to represent himself. Gooch said he did. This was on November 26, 2014. The court then asked the required questions, approximately 13 questions that the court is required to ask when dealing with a defendant that wants to represent himself. Also, the court cautioned against Mr. Gooch representing himself. The court asked if Mr. Gooch had ever had a legal experience or ever represented himself in the past, which he hadn't. The court said he felt it would be better if Gooch was represented by counsel. The court explained somewhat the rules of evidence, the rules of federal procedure, criminal procedure. After all that, and after Gooch had been found competent now two or three times, the court found that he had knowingly and voluntarily waived the right to counsel and allowed him to represent himself with standby counsel, Jeff Hastings, who had been his attorney before and was also representative in the competency evaluations. Some of the argument about competency dealt with Gooch's stated belief somehow that he had maybe a special relationship with God and that God wouldn't let him serve time in jail and things like that. Well, that might be considered bizarre. It doesn't make him incompetent. It doesn't make his decision to waive counsel any less knowing or voluntary. So really, the court, I think, did everything it possibly could to ensure that after he was found competent, to ensure that he understood his rights as far as self-representation and that he knowingly and voluntarily waived those rights. On the sufficiency argument, Mr. Gooch is correct in that Rosemond v. U.S. requires advanced knowledge that an accomplice would use or carry a firearm during a robbery. But that advanced knowledge can be circumstantial. He's also correct that there is no direct evidence that Gooch knew during the Shaker Square robbery, which was the third robbery in March, that Williams was going to use a gun. But there is a lot of circumstantial evidence that Gooch was aware of that fact. The method that all three of these people used to do these robberies, starting with Rose's robbery, and then the Lee Harvard Bank robbery, and then the Shaker Square robbery was substantially the same. Sean Caldwell drove Gooch, and the first one, Larnell Tripp, but then Greg Williams in the second and third, drove them to location. He provided the gun. Gooch, in the Rose's robbery, witnessed Caldwell give the gun to Tripp and watched him load it for him. He said that they knew when they were driving over that they were going to rob the store. Gooch planned the robbery of the store with Ashley White, who was a cashier at the store and was his cousin. They also split the proceeds of the robbery. The Lee Harvard robbery, Gooch obviously went in and used the gun, so that's really not a question. But they followed the same plan. Again, Caldwell drove them to Lee Harvard Bank. Gooch and Williams went in, left after interaction with the security guard, but came back and committed the robbery and then split the proceeds. The Shaker Square robbery was a similar plan. Caldwell drove, Williams and Gooch got out of the car, Gooch stayed outside as a lookout while Williams went in and committed the robbery. Circumstantially, I think a jury could have found that Gooch had knowledge that a firearm was going to be used in that third robbery, given that it was used in the first two, and all the participants were the same, and that the plan was substantially the same. As far as the Roses robbery, I think that's even a stronger case. Gooch planned that robbery. He clearly encouraged and assisted the principal and the commission of the offense. Again, he knew the robbery was going to occur and he shared in the proceeds, actually giving money to his girlfriend and also using that money to buy stereo equipment for himself. The only other argument is consecutive sentences on the 924C convictions, but that argument is foreclosed by DLV-US, which, although it may be subject to discussion, is still good law and controls in this case. Are there no further questions? There wasn't any issue in connection with the sentencing about the reasonableness of the 664-month sentence. Was there any discussion about that at the sentencing hearing? Well, they didn't raise the deal issue at sentencing, so it's plain error review. Okay. And also with the 924C, I don't believe that was also plain error review. All right. Thank you. Thank you, Your Honors. I think the best I can say about the sufficiency of the evidence argument is that a discussion ahead of time that we're going to rob a bank doesn't automatically carry with it the idea that one or the other people is going to use a gun. And, again, you can say it's the same, but robberies are robberies. All robberies are not the same. You've got a different case of people. They're the same three people in all three robberies, aren't they? No. Mr. Tripp is the actual robber that goes into the… No, but aren't there three conspirators? Well, we've got Mr. Caldwell, who's the same. We've got Mr. Gooch, who's the same for all three. We have Mr. Tripp, who's only on the first department store robbery, and Mr. Williams is on the second two bank robberies. All right. So it's not the same. So we've got two out of three, including your client, are on all three. Right. Okay. So one case I thought, as I was preparing, I thought, and I had said that my brief was the Spinney case, which is a First Circuit case where the court said, well, it was reasonable to sustain the jury's verdict finding a person guilty of armed bank robbery where there had been some advanced discussion of robbing a bank, but not reasonable to sustain the verdict finding the person guilty of a 924C violation arising out of the same robbery and indicating that it's a little higher standard as to 924C. So I would ask the court to review that decision because I think that's at issue in this particular case as well, particularly if you look at all this evidence and Mr. Gooch readily acknowledges guns on the first two cases and there's no discussion of the gun and he's not in the bank and no showing. And we're talking about a mandatory 25-year sentence here. So I'd ask the court to give careful attention to that. Are there no further questions? Apparently not. Thank you very much. Thank you. And the case is submitted. Thank you.